# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| TAMARA BARNHART,<br><br>　　　　　Plaintiff/Counter-Defendant,<br><br>vs.<br><br>PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>　　　　　Defendant/Counter-Claimant. | CV 21-09-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiff/Counter-Defendant Tamara Barnhart ("Barnhart") brings this action against Defendant/Counter-Claimant Philadelphia Indemnity Insurance Company ("PIIC"), seeking declaratory judgment that she is entitled to Uninsured Motorist ("UM") coverage under a commercial auto policy issued by PIIC to her employer, Youth Dynamics, Inc. (Doc. 1.)

Presently before the Court are PIIC's Motion for Summary Judgment, and Barnhart's Cross-Motion for Summary Judgment.[1] (Docs. 28, 31.) The motions are fully briefed and ripe for the Court's review. (Docs. 37, 38.)

---

[1] Barnhart has requested a hearing on the parties' cross motions for summary judgment. The Court finds the motions are suitable for disposition without oral argument. Accordingly, Barnhart's Motion for Oral Argument (Doc. 40) is **DENIED**.

Having considered the parties' submissions, the Court finds PIIC's Motion for Summary Judgment should be **GRANTED**, and Barnhart's Motion for Summary Judgment should be **DENIED**.

## I.   BACKGROUND[2]

In 2017, Barnhart was employed by Youth Dynamics, Inc. ("YDI") as a youth case manager.  YDI provides youth and family behavioral health services across Montana and operates from approximately 30 locations around the state. Barnhart worked out of YDI's "Billings Community" office.  In that position, Barnhart was responsible for providing services to YDI clients in the Billings area, and frequent in-town travel was required.

YDI maintained a fleet of vehicles across Montana.  In March 2017, YDI insured its entire fleet under a commercial auto policy issued by PIIC (the "Policy").  At the beginning of the Policy period, 32 YDI leased or owned vehicles were insured under the Policy.  An additional 9 vehicles were added to the Policy during the course of the Policy period.

In 2017, just two of YDI's fleet of vehicles were primarily kept at YDI's Billings Community office, a 2015 Nissan Versa and a 2015 Nissan Altima.  The

---

[2] The background facts are taken from the parties' submissions, including Barnhart's Statement of Undisputed Facts (Doc. 32), PIIC's Statement of Disputed Facts (Doc. 36), and Barnhart's Statement of Disputed Facts (Doc. 39).  The facts are undisputed, unless otherwise indicated.

vehicles were used by approximately 20 employees who, like Barnhart, who were responsible for providing client services in the area.

During the relevant time period, YDI's personal vehicle use policy provided that employees were expected to use YDI vehicles for business purposes unless none were available. If no YDI vehicles were available, employees were required to use their personal vehicles, and would be reimbursed for mileage. All YDI employees were required to sign a "Vehicle Requirements for Employment" form, that stated the use of personal vehicles may be required, and that employees were required to have personal vehicle insurance coverage.

On September 6, 2017, Barnhart was injured in a motor vehicle accident in Billings, while performing duties of her employment with YDI. She was driving her personal vehicle at the time, and was returning to the Billings Community office after working with a YDI client. She alleges the accident was caused by the other driver, who was uninsured.

Barnhart was required to use her personal vehicle on that date because both of the YDI vehicles were being used by other case managers at the YDI Billings Community office and were unavailable. Neither was unavailable because of breakdown, repair, service, loss or destruction. In fact, on September 6, 2017, only one vehicle in the YDI Fleet – a 2001 Ford Econoline E-350 Super Duty van – was out for service for general maintenance repairs. The Ford van was listed in the

3

Policy Business Auto Schedule as being garaged in Billings.  But it is undisputed that the Ford van was located and maintained in Bozeman, Montana, and was primarily used by employees of the Bozeman YDI office.

Barnhart seeks UM coverage under PIIC Policy. The Policy provided UM coverage pursuant to the terms, conditions, restrictions and exclusions of the Policy.  Under the Policy, UM coverage was restricted to "Owned 'Autos' Only," which coverage was defined as "Only those 'autos' you own."

But the Policy also contained an Endorsement entitled "Montana Uninsured Motorist Coverage – Nonstacked."  The Endorsement included a "temporary substitute auto" provision that provided UM coverage was extended to:

> Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto."  The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

(Doc. 29-1 at 53.)

Barnhart contends she is entitled to UM coverage under the temporary substitute auto provision of the Policy because she was using her personal vehicle as a substitute for a covered YDI vehicle at the time of the accident.

## II.   LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.*

When parties file cross-motions for summary judgment, the Court reviews each motion on its own merits. *Fair Housing Council of Riverside Cty, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

### B. Contract Interpretation

The Court's jurisdiction over this action is based on diversity of citizenship. Thus, the Court must apply the substantive law of Montana. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). In Montana, the interpretation of an insurance contract is a question of law. *Scentry Biologicals, Inc. v. Mid-continent Cas. Co.*, 374 Mont. 18, 23 (2014). A court interpreting an insurance policy is to read the policy as a whole and, to the extent possible, reconcile the policy's various parts to give each meaning and effect. *O'Connell v. Liberty Mut. Fire Ins. Co.*, 43 F.Supp.3d 1093, 1096 (D. Mont. 2014) (*citing Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 343 Mont. 279 (2008)).

In interpreting insurance contracts courts also must give terms and words in the contract their usual meaning and construe them using common sense. *Id.* "It is

well established that in construing and analyzing the terms of an insurance policy we look first to the policy's plain language.  In doing so we apply the 'common sense meaning as viewed from the perspective of a reasonable consumer of insurance products.'"  *Monroe v. Cogswell Agency*, 356 Mont. 417, 421 (2007) (citing *Stutzman v. Safeco Ins. Co. of* America, 284 Mont. 372 (1997).  Any ambiguities in the insurance contract are construed against the insurer.  *Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 350 Mont. 184, 198-99 (2009).

The insured bears the burden of showing that its claim falls within the basic scope of coverage under the policy.  *Travelers Cas. & Surety Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 476 (2005).  In turn, the insurer has the burden of proving the claim is excluded under an exclusionary clause.  *Id.*

## III.    DISCUSSION

The sole issue before the Court is whether the temporary substitute auto provision in YDI's commercial Policy affords UM coverage for the accident involving Barnhart's private vehicle.  PIIC argues there is no coverage because neither of the specific YDI vehicles Barnhart intended to use on September 6, 2017 – the Nissan Versa or Nissan Altima – were out of service due to "breakdown, repair, servicing, 'loss' or destruction."  Barnhart counters that she is entitled to coverage because at least one YDI insured vehicle – the Ford Van in Bozeman – was out of service for repairs on September 6, 2017.  The Court agrees with PIIC.

The Ninth Circuit considered a very similar substitute auto provision in *Progressive Cas. Ins. Co. v. Owen*, 519 F.3d 1035 (9th Cir. 2008).[3] Progressive insured 12 vehicles owed by Owen Trucking. Arlene Owen was a shareholder and part-time employee for Owen Trucking. Arlene was injured while working with a truck owned by an employee of Owen Trucking and not insured by Progressive.

Arlene sought coverage for her injuries under the substitute auto provision of the Progressive policy. She alleged that she did not use one of Owen Trucking's covered vehicles because more than one of the covered vehicles was always broken down or being serviced.

Applying Montana law, the Ninth Circuit determined that a substitute vehicle was covered under the policy "only if [Arlene] intended to use an Owen Trucking vehicle but could not because the vehicle was withdrawn from normal use due to breakdown, repair, servicing, loss, or destruction." *Id*. at 1041. The Court found Arlene's assumption that an Owen Trucking vehicle was unavailable was not sufficient, and failed to establish that she did not use a covered vehicle "because a specific Owen Trucking vehicle that she intended to use was actually withdrawn from service." *Id*. Summarizing its holding, the court said "[i]n order

---

[3] The temporary substitute auto provision at issue in *Progressive* defined an "insured auto" as "[a]ny auto not owned by you while you are temporarily driving it as a substitute for any other auto described in this definition because of its withdrawal from normal use due to breakdown, repair, servicing, loss or destruction." *Progressive*, 519 F.3d at 1038.

to obtain coverage under the substitute auto provision, Arlene must produce evidence that she [1] intended to use a specific vehicle covered under Owen Trucking's policy but could not because of its unavailability, or [2] that she would have used one of several or even all of the vehicles covered under the policy, but could not because all of the vehicles she would have used were unavailable." *Id.* at 1040.

Here, the undisputed facts do not establish that Barnhart intended to use a specific vehicle but could not because it was out of service. Barnhart testified that on September 6, 2017, she intended to use the Nissan Versa or the Nissan Altima that were kept at YDI's Billings Community office, but both were checked out. (Doc. 30-1 at 6-7.) Thus, it is undisputed that the specific YDI vehicles that Barnhart would have used on September 6, 2017 were either the Nissan Versa or the Nissan Altima. It is further undisputed that neither the Nissan Versa nor the Nissan Altima were out of service due to breakdown, repair, servicing, loss or destruction on that date. Rather, all of the vehicles that Barnhart would have used were unavailable to her because they were being used by other employees. Therefore, Barnhart's use of her personal vehicle does not fall within the Ninth Circuit's interpretation of the temporary substitute auto provision.

Nevertheless, Barnhart urges the Court to look to the Montana Supreme Court's decision in *Stonehocker v. Gulf Ins. Co.*, 368 P.3d 1187 (Mont. 2016) for

8

guidance. *Stonehocker* did involve the application of a similar temporary substitute provision. [4] But the issue before the Supreme Court in *Stonehocker* was different than that presented here.

Stonehocker was a camp cook on a guest ranch, and normally performed her duties using her personal pickup to haul a trailer with a mobile kitchen to different campsites. Another ranch employee would usually transport guests and their luggage with an insured vehicle – a ranch-owned Suburban. During the time period in question, however, the Suburban was undergoing mechanical work and was not available for use. Therefore, Stonehocker used her personal pickup and trailer to transport guests and luggage during a multi-day "cattle drive." She was injured on the final night of the drive when her pickup was stolen and driven away from a campsite while she was asleep in the attached trailer.

The state district court held there was no coverage under the temporary substitute provision unless it could be established that Stonehocker personally would have been using the Suburban at the time of the accident had it been available. After finding that she would not have done so, the district court granted summary judgment to Travelers.

---

[4] The temporary substitute auto provision at issue in *Stonehocker* provided UM coverage for "[a]nyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto,'' as long as '[t]he covered 'auto' [is] out of service because of its breakdown, repair, servicing, loss or destruction.'" *Stonehocker*, 368 P.3d at 1190.

On appeal, the Montana Supreme Court reversed, and found it was not necessary to prove that Stonehocker, and no one else, would have occupied the insured vehicle at the time of the accident.  The court explained that the "proper test for identifying a temporary substitute vehicle is whether it is put to the same use to which the covered vehicle would have been put but for its withdrawal from service."  *Id.* at 1192.

Consequently, the issue presented here – whether a covered automobile was withdrawn from use for repairs – was not before the Montana Supreme Court in *Stonehocker*.  There was no question in *Stonehocker* that the insured Suburban was undergoing mechanical work and was out of service.  Rather, the issue in *Stonehocker* was whether the substitute auto was put to substantially the same use as the insured vehicle, which is not an issue here.  It is undisputed that Barnhart's vehicle was being put to the same use as a covered vehicle.  Therefore, the Montana Supreme Court's opinion in *Stonehocker* provides little guidance here, and does not conflict with the Ninth Circuit's decision in *Owen*.[5]

---

[5] The Montana Supreme Court recognized that the Ninth Circuit addressed a separate issue in *Owen*, and that *Owen* was of little help in answering the issue presented in *Stonehocker*.  *Stonehocker*, 368 P.3d at 1193 ("*Owen* differs from the case at bar because in *Owen*, Arlene was unable to satisfy the second requirement of the temporary substitute auto provision: that the covered auto was withdrawn from use for repairs.  In the present case, the requirement that the covered auto be withdrawn from use for repairs is established and undisputed.  The only remaining question is whether Stonehocker's pickup qualified as a temporary substitute for the out-of-use Suburban. *Owen* does not help this Court answer that question.").

Barnhart also argues, however, that the out of service requirement is satisfied here because of the service being performed on an insured vehicle in Bozeman.  But the fact that a Ford van, located and used in another city,  was undergoing general maintenance repairs is insufficient to satisfy the requirements for coverage under the temporary substitute auto provision.  Barnhart has presented no evidence that her personal vehicle was being used in place of the Ford van.  To the contrary, the undisputed evidence shows that Barnhart's vehicle was being used in place of either the Nissan Versa or the Nissan Altima.

Barnhart further argues that her personal vehicle qualifies as a temporary substitute as long as "any of the covered autos, *i.e.*, any of the YDI listed vehicles on the Business Auto Schedule" were out of service for repairs.  (Doc. 33 at 8.) This argument runs contrary to the purpose of the temporary substitute auto provision.

The objective of a temporary substitute auto provision "is to afford continuous coverage to the insured while limiting the risk of the insurer to one operating vehicle at a time for a single premium[.]"  8A Couch on Ins. § 117:62. Courts generally recognize that coverage under a temporary substitute auto provision should not be extended to increase the risk originally assumed by the insurer.  *Id.  See e.g. Houston Gen. Ins. Co. v. Am. Fence Co., Inc.*, 115 F.3d 805,

807 (10th Cir. 1997) ("[T]he purpose of a substitute automobile provision is not to defeat liability but, rather, to provide additional coverage for the insured yet reasonably define coverage by limiting the insurer's risk to one operating vehicle at a time for a single premium.").

Barnhart's interpretation of the Policy would potentially extend coverage to multiple YDI employees' personal vehicles on any given day simply because a single vehicle somewhere in YDI's fleet happened to be out of service.  Barnhart's coverage argument would, therefore, defeat the purpose of the temporary substitute auto provision by extending coverage to more than one operating vehicle at a time.

The Court finds that under the plain meaning of the Policy, Barnhart is not entitled to UM coverage under the temporary substitute auto provision, because she has not shown that she was using her personal vehicle in place of a YDI vehicle that was withdrawn from use because of a breakdown, repair, loss or destruction.

Accordingly, the Court finds summary judgment should be entered in favor of PIIC on the issue of coverage.

## IV.    CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that PIIC's Motion for Summary Judgment (Doc. 28) should be **GRANTED**, and Barnhart's Motion for Summary Judgment (Doc. 31) should be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 27th day of January, 2023.

_____

TIMOTHY J. CAVAN
United States Magistrate Judge